**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robbin Shea Brown,         ) | No. CV 16-0026-TUC-FRZ (LAB) |
| ) | |
| Petitioner,    ) | **REPORT AND RECOMMENDATION** |
| ) | |
| vs.                            ) | |
| ) | |
| S. Lake,                     ) | |
| ) | |
| Respondent.  ) | |
| ) | |

Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241, filed on January 13, 2016. (Doc. 1) The petitioner, Robbin Shea Brown, challenges the loss of 52 days of good-time credits after a prison disciplinary proceeding.

The respondent, Warden S. Lake, filed an answer opposing the petition on February 18, 2016. (Doc. 9)  Brown did not file a reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bowman for a Report and Recommendation.  The petition should be denied on the merits.

Summary of the Case

On September 4, 2013, Brown pleaded guilty to the charge of Aiding and Abetting Possession with Intent to Distribute Marijuana in the U.S. District Court for the District of Arizona. (Doc. 9-1, p. 7)  He was sentenced to a 60-month term of incarceration. *Id.*  He is currently confined at the Federal Correctional Institution (FCI) in Safford, Arizona. (Doc. 9-1, p. 2)

At 10:00 p.m., on October 6, 2015, staff was attempting to clear the commissary lobby. (Doc. 9-1, p. 25) Inmate Brown was still in the lobby and told staff he "had too much stuff and he needed to get help." *Id*. Staff member Truelove instructed Brown to leave the lobby so the store could close. *Id*. Brown told Truelove that it was "bullshit." *Id*. Truelove stopped Brown and told Brown not to curse at him. *Id*. Brown told Truelove again that it was "bullshit." *Id*. Truelove ordered Brown to get his things and leave. *Id*.

Brown was charged in incident report # 2769448 with insolence toward staff member, code 312, and using abusive or obscene language, code 404. (Doc. 9-1, p. 25) Brown explained to the Unit Discipline Committee as follows:

> I never cussed at him. I left when he told me. I asked another inmate [to] help me get my stuff and leave. I stayed calm the whole time.

(Doc. 9-1, p. 25)

The Disciplinary Hearing Officer (DHO) conducted a hearing on October 21, 2015. (Doc. 9-1, p. 28) Brown was represented by Officer S. Vigus. *Id*. Brown stated as follows:

> I told him I needed help to carry my stuff and he stated: "Don't cuss at me." I said, "I'm not cussing at you." He said, "I don't care, you need to get out." I opened the door and asked [redacted] if he would help carry my stuff because he was standing outside the door next to the concrete bench. He stepped in and helped me carry my stuff out.

(Doc. 9-1, p. 28)

Brown called one witness to testify, the inmate who helped him carry his commissary items. This inmate denied being present during the verbal altercation. (Doc. 9-1, p. 29) He stated, "I was going back to work and I was standing outside." *Id*. "He gave me some commissary items to put on the bench." *Id*.

The DHO found "[b]ased on the greater weight of the evidence" that Brown committed the prohibited act of insolence toward staff, code 312. (Doc. 9-1, p. 30) He dismissed the charge of using abusive language, code 404. *Id*. The DHO sanctioned Brown with the disallowance of 7 days of good-conduct time, the forfeiture of 45 days of non-vested good-

conduct time, 30 days of disciplinary segregation from a previously suspended sanction, 30 days of disciplinary segregation, and a two months loss of telephone privileges. *Id*.

On January 13, 2016, Brown filed the pending petition for writ of habeas corpus pursuant to 28 U.S.C. 2241 challenging this disciplinary action. (Doc. 1)  He argues (1) he was not allowed to present certain documentary evidence at the hearing,  (2) the DHO was biased against him,  (3) he did not receive notice that his halfway house placement could be revoked as punishment,  and (4) it would be futile to use the administrative appeals process. (Doc. 1-2)

The respondent filed an answer on February 17, 2016 in which he argues the petition should be dismissed for failure to exhaust or, in the alternative, denied on the merits.  (Doc. 9)  Brown did not file a reply.  *See* (Doc. 4)

The court finds that the petition should be denied on the merits.  The court expresses no opinion on the respondent's alternative arguments.

Discussion

"Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974).  Nevertheless, prisoners do retain some constitutional rights concerning the procedures for administering prison discipline.  *Id*.  These rights are not as extensive as those due a defendant in a criminal proceeding, but they are not negligible.  *Id*.

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action."  *Zimmerlee v. Keeney*,  831 F.2d 183, 186 (9th Cir. 1987), *cert. denied*, 487 U.S. 1207 (1988).  "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals."  *Id.*

The final decision to revoke good-time credits must be based on "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."

1  *Id.* at 455-56.  If so, then due process is satisfied.  *Id.*  The court need not examine the entire
2  record, independently assess the credibility of the witnesses, or weigh the evidence.  *Id.* at 455.
3        In Claim (1), Brown argues he was not allowed to go back to his locker and retrieve
4  documentation that would show "that the CO involved has a long history of fictitious 'incident
5  reports' and either blatantly lies or fabricates 'facts' or embellishes his storys [sic] for
6  sensationalisuim [sic]."  (Doc. 1-2, p. 4)  He did not attach this "documentation" to his petition.
7        Brown's claim is not supported by the record.  There are no references in the DHO report
8  to Brown's alleged documentation.  On the contrary, the DHO report states that Brown "had no
9  evidence to present" although he did "request[] a witness," the inmate who helped him carry his
10 commissary items.  (Doc. 9-1, p. 28, § III B)  Moreover, Brown was represented at the hearing
11 by Officer S. Vigus.  (Doc. 9-1, p. 29)  Vigus reported that, "We have discussed the incident and
12 I have talked to his witness."  *Id*.  Vigus did not say that Brown had additional "documentation"
13 that he wished to present.  *Id*.  There is no evidence in the record to support Brown's allegation
14 that he was prevented from introducing his "documentation."  His claim therefore should be
15 denied.
16       In the alternative, the court finds that even if Brown's allegations are true, and he was
17 prevented from presenting his "documentation" at the hearing, he cannot establish a due process
18 violation.  A due process violation requires proof of prejudice.  *Watkins v. Winn*, 2013 WL
19 6823275, at *8 (D. Ariz. 2013)  ("[E]ven if a prison official's actions create a potential due
20 process violation, a habeas petitioner needs to demonstrate that he was harmed by the violation
21 in order to obtain relief.").  Here, Brown cannot establish prejudice because he has not attached
22 his "documentation" to the petition, and the court cannot evaluate its probative value.  *See, e.g.*,
23 *Lee v. Kramer*, 2008 WL 4507584, at *4 (E.D. Cal. 2008) ("Petitioner has not shown prejudice
24 resulting from the failure to call his potential witnesses, or the failure to consider his witness
25 list, as he has not shown what the witnesses' testimony would have been or that it would have
26 been sufficient to rebut the eyewitness account of correctional staff."), report and
27 recommendation adopted, 2008 WL 5246383 (E.D. Cal. 2008); *Aasim v. Smelosky, Warden*,
28

2009 WL 6366617, at *2 (S.D. Cal. 2009) (similar), *report and recommendation adopted sub nom. Nia v. Smelosky*, 2010 WL 1626054 (S.D. Cal. 2010).

In Claim (2), Brown argues the DHO was biased against him. (Doc. 1-2, p. 5) He states "Lt. Peterson has a personal issue with me, he has in the past punished me on his 'friends' word alone 'just because.'" *Id*. He further states that Peterson, "broke the law to punish me in regards to my religious practice" citing CV 15-0328 TUC FRZ (LAB).[1] *Id*. He further alleges that Peterson ruled against him due to personal animus. *Id*.

Prisoners have a due process right to an unbiased decision maker. *Wolff v. McDonnell*, 418 U.S. 539, 570-571, 94 S. Ct. 2963, 2982 (1974). "[A] prison official who has participated in the case as an investigating or reviewing officer, or who has personal knowledge of the incident, is not sufficiently impartial to preside over the hearing." *James v. Rios*, 2012 WL 2912249, at *4 (E.D. Cal. 2012). A prisoner alleging bias must overcome the "presumption of honesty and integrity on the part of decision makers." *Burgess v. Rios*, 2015 WL 3402933, at *6 (E.D. Cal. 2015).

Here, Brown argues his hearing officer, Peterson, was biased because he has punished Brown in the past. This is insufficient. Evidence that a particular hearing officer has, in the past, held against the prisoner is not evidence of bias. *Burgess v. Rios*, 2015 WL 3402933, at *7 (E.D. Cal. 2015); *Gauthier v. Dexter*, 573 F. Supp. 2d 1282, 1289 (C.D. Cal. 2008), *aff'd sub nom. Gauthier v. Herndon*, 390 F. App'x 711 (9th Cir. 2010). Brown's allegation that Peterson ruled against him simply due to personal animus is also without support. Peterson ruled against Brown based on the testimony of the reporting officer, Truelove, not personal animus. *See Normand v. Dretke*, 2008 WL 657246, at *3 (E.D. Tex. 2008) ("The fact that the hearing officer found the testimony of the charging officer more convincing than petitioner's does not substantiate a claim of bias.").

---

[1] In the past, Brown was disciplined for failing to keep his religious medallion out of sight inside his shirt. *See* CV 15-0328 TUC FRZ (LAB). This court found that Brown's discipline was in accordance with the law. *Id*.

- 5 -

In Claim (3), Brown argues that he did not receive notice that his halfway house placement could be revoked as punishment. (Doc. 1-2)  This claim has no factual basis. Brown's halfway house placement was not affected by this disciplinary incident. He apparently is scheduled for halfway house placement on May 3, 2016.  (Doc. 9-1, pp. 4-5).

In Claim (4), Brown argues it would be futile to use the administrative appeals process. The court finds this argument to be moot.  The petition may be denied on the merits.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying the petition for writ of habeas corpus filed on January 13, 2016.  (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  The Local Rules permit a response to an objection. They do not permit a reply to a response.

DATED this 16th day of June, 2016.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge